EASTERN DIST.
*May*, 1837.

PENNY ET UX.
*vs.*
TOULOUSE ET AL.

simulation, it is essentially necessary to put the party in *morâ*, previous to the demand for a rescission.

An administratrix cannot be legally called on to pay any debt of the succession she administers, except before the Probate Court: So, she is not bound to tender the balance of the price of a tract of land, to avoid being put in *morâ* by the vendor's plea for a rescission of the sale.

</div>

It is, therefore, ordered, adjudged and decreed, that the judgment of the Parish Court be affirmed, with costs.

---

## PENNY ET UX. *vs.* TOULOUSE ET AL.

### APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT.

A donation of slaves or other property susceptible of mortgage, according to the provisions of the Civil Code of 1808, was null and void, if not *recorded* or transcribed in the office of the register of mortgages.

So, where a donation was made of a slave by a father to his child in 1815, and the act of donation was never recorded in the office of the register of mortgages, it was held to be null as to third persons.

Eastern Dist.
*May*, 1837.

Penny et ux.
*vs.*
Toulouse et al

This is a petitiory action instituted by J. Penny and wife, in which she claims a slave named Jourdan, in virtue of the following donation made by her father, Maj. White, to her, when she was but seven months old ;

"Before Narcisse Broutin, duly commissioned a notary public for the city and parish of New-Orleans, appeared John Noble, lieutenant in the 7th regiment of infantry, garrisoned in this city, who by these presents sold, ceded and transferred, now and forever, under all warranties and maladies prescribed by law, free from every mortgage, as appears by the certificate of the register of mortgages, dated this day,"

"To Mr. Alexander White, major of the 12th regiment of infantry, at present in this city, a negress named Judith, aged about twenty-seven years, and her son, a mulatto, named Jourdan, aged eight years, to which slaves he acquired right by virtue of an act of sale from J. G. Chaumette, passed before the notary undersigned in 1814, which negress and her child, the said Alexander White declares to have purchased for his daughter, named Ann Matilda, aged about seven months, and to the end that she may enjoy, use and dispose of them as property to her belonging, having from this moment made a perfect and irrevocable donation of them to her in perpetuity, in the best form which a donation can be made to have right in law ; which slaves are henceforth in the possession of the purchaser, who hereby acknowledges it, and accepts them in the name of his daughter, without the aforesaid warranties.

"The present sale is made for and in consideration of the sum of seven hundred dollars, which the vendor declares to have received in cash from the purchaser, out of the presence of the notary and witnesses undersigned, to whom he grants good and valuable acquittance and discharge.

"In consideration of which payment thus made in cash, the vendor transfers to the purchaser all the rights which he has and may have over the said slaves by him now sold, and grants him seizin thereof, of which act, promising, obliging, renouncing."

The defendant pleaded the general issue, and called John
Reed, his vendor, in warranty.

Reed pleaded title to the slave in question, derived to him
by the sheriff's sale, who was seized and sold as the property of Maj. White, in 1823. · He further averred that the act of donation under which the plaintiff claims, is null and void, that it is simulated and fraudulent, being made to cover the property of the donor from his creditors, and not having been made according to law.

There was judgment for the defendants, and the plaintiffs appealed.

*Lawrence* and *Winthrop,* for the plaintiffs, made the following points :

1. The sale from Noble vested the property in the slave in the plaintiff, Ann Matilda.

2. If the title to the slave was acquired by White, by virtue of the sale from Noble, judgment should have been rendered for plaintiffs, inasmuch as White was never legally divested of such title, and the evidence shows that the plaintiff, Ann Matilda, is his legal heir.

*Macready* and *Curry,* for the defendants and warrantors, contended, that the act of donation under which the plaintiffs claim, is null and void, because, from the testimony in the case, it is evident that Maj. White, the pretended donor, gave these slaves to his infant daughter, with a view to cover his property from his creditors. The evidence shows he was a dissipated man, always in embarrassed circumstances, and living on his wife's property. *Pages of the Record,* 19 and 20.

2. The act is simulated and void on its face. Maj. White appears therein as purchaser, donor and accepting for the donee. As purchaser the property vested in him, and he has not and could not divest himself in the manner he has attempted, in the same act.

3. The act is defective in form and for want of parties. All acts containing donations must be in the *usual form of contracts,* or they are null and void. In this act the donor and

EASTERN DIST. donee accepting is the same person. A person cannot sell
*May,* 1837. or make a donation to himself. *Civil Code of* 1808, *page* 220,
PENNY ET UX. *article* 53.
*vs.*
TOULOUSE ET AL. 4. The act sued 'on is null for want of transcription in the
mortgage office. The law required *all donations* of property
*susceptible* of mortgage, to be transcribed in the office of the
register of mortgages for the territory, within the time for the
transcription of mortgages. This property was susceptible
of mortgage, and the act was never recorded in the mortgage
office. *Civil Code, page* 222, *article* 62.

5. The want of transcription and recording may be pleaded
by all persons concerned. *Ibid., article* 64.

6. This *donation is* null *for want* of estimation of the pro-
perty donated. "No donation of *movable property* or slaves
*shall* be valid for any other effects than those of which an
estimate signed by the donor or donee, or by those who
accept for him, is annexed to the record of the donation."
The notarial act in this case is invalid for want of the *estimate*
required by law, of the slaves donated, and is no evidence of
title in the donee. *Civil Code, page* 218, *article* 48. 4 *Martin,*
*N. S.,* 464.

7. The defendant and warrantor are possessors in good
faith, under just titles translative of property, and cannot be
disturbed unless the plaintiffs show a good and better title.

*Bullard, J.,* delivered the opinion of the court.

The plaintiff, Ann Matilda, wife of J. Penny, alleges that
she is the legal proprietor of a mulatto slave named Jourdan,
now in the possession of the defendant, Toulouse. She
alleges title to him in virtue of a notarial act, annexed to and
making part of his petition.

The original defendant denies the title of the plaintiff,
and asserts that he is the just owner in virtue of a sale from
John Reed, who is cited as warrantor.

The answers of Reed also denies the title of the plaintiff,
and avers that the act of sale and donation relied on by the
plaintiff, is simulated, null and void, being made to a minor,
and accepted contrary to law, and with the fraudulent intent

of covering the property of A. A. White, the father of the plaintiff, from his creditors. He further alleges that the slave was the property of White, and as such, was seized and sold under execution, in 1823, and was purchased by him, the respondent, *bonâ fide.*

The act relied on by the plaintiff as evidence of title, purports to be a sale of the slave in question, together with his mother, from John Noble to Alexander White, for the price of seven hundred dollars; in the same act the purchaser declares that he makes the acquisition for his daughter, Ann Matilda, aged about seven months, and he makes to her a perfect and irrevocable donation in the best form donations could be made, and he accepts the donation in the name of his child.

As between Noble and White, this act undoubtedly contains all the essentials of a contract of sale, and the title of the slaves vested in White. It only remains, therefore, to inquire whether the act furnishes evidence of a valid donation from White to his infant daughter.

It is contended on the part of the defendant, that the act, as a donation, is null and void, because it has not proper parties, the donor himself accepting for the donee; because it never was transcribed in the office of the recorder of mortgages; and because it is not accompanied by any estimation as required by law; and he relies on the code of 1808, pages 220, article 53; 222, articles 62 and 64; 218, article 48.

We have not thought it necessary to inquire whether the father's acceptance for his child under the age of puberty, would be valid, or how far the price mentioned in this act might be considered as a sufficient estimate to accompany the donation; because, admitting the donation in this case to be sufficiently formal in these respects, it has appeared to us that the want of inscription is alone fatal. The code in force at the date of this transaction required that a transcript of the instrument containing a donation of property susceptible of mortgage should be recorded in the office of the register of mortgages, and that the want of such transcription might be pleaded by any one except those who were charged to have

EASTERN DIST.
·*May*, 1837.

PENNY ET UX.
*vs.*
TOULOUSE ET AL.

A donation of slaves or other property susceptible of mortgage, according to the provisions of the Civil Code of 1808, was null and void, if not *recorded* or transcribed in the office of the register of mortgages.

So, where a donation was made of a slave, by a father to a child, in 1815, and the act of donation was never recorded in the register of mortgages, it was held to be null as to third persons.

EASTERN DIST.
May, 1837.

VIRGINIA MAR.
INSURANCE CO.
vs.
MILLAUDON.

the transcription made, and the donor, and that minors should not be entitled to restitution against the want of such transcription or acceptance, saving their recourse against their tutors or curators.   *Articles 62, 63, 64, page 222.*

This being a petitory action, and the plaintiff having failed to show title in herself, it is useless to examine a question which arises on a bill of exceptions, whether the court erred in admitting as evidence, to show title in the defendant, a copy of the act of sale.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.